996 F.2d 1222
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES of America, Appellee,
v.
James VIVEROS, Appellant.
 No. 93-1640.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: June 17, 1993.
Filed: June 28, 1993.
 
 Before BOWMAN, MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 James Viveros appeals the 240-month sentence imposed by the District Court[1] following his guilty plea to conspiring to distribute cocaine. We affirm.
 
 
 2
 A grand jury indicted Viveros for conspiring to distribute cocaine during two separate time periods and with two different sets of coconspirators. The first indictment alleged that from September 1, 1990, to June 30, 1991, Viveros conspired with ten individuals to distribute cocaine in the Western District of Missouri. According to the indictment, Viveros supplied large quantities of drugs to the conspiracy through Valerie Elfarra, who later became a government informant. The conspiracy distributed seventeen kilograms of cocaine in this manner. The second indictment alleged that between November 1, 1991, and January 21, 1992, Viveros conspired with two other individuals to distribute five kilograms of cocaine. On January 21, 1992, Viveros sold two kilograms of cocaine to Elfarra and an undercover FBI agent, Larry Tongate, from his apartment. During the sale, Viveros stated he could obtain three more kilograms the next day. Law enforcement officials arrested Viveros and his cohorts shortly after the sale and found a .38 caliber automatic pistol in the apartment. Pursuant to a plea agreement, Viveros pleaded guilty to the conspiracy charged in the first indictment, and the government agreed to dismiss the second indictment.
 
 
 3
 Applying the 1991 version of the United States Sentencing Guidelines (U.S.S.G.), the presentence report (PSR) calculated Viveros's base offense level as 34, on the basis of the twenty-two kilograms of cocaine involved in the two conspiracies. U.S.S.G. § 2D1.1(c)(5) (at least 15 but less than 50 kilograms of cocaine). The PSR recommended a two-level increase under U.S.S.G. § 2D1.1(b)(1), based on the gun found in Viveros's apartment. The PSR also suggested a four-level leadership increase under U.S.S.G. § 3B1.1(a), on the grounds that Viveros was the major drug supplier of an extensive criminal network, he controlled the amount of cocaine available, he set the price for the cocaine, and he instructed other participants where to pick up the cocaine. After deducting two levels for acceptance of responsibility, the PSR computed the total offense level as 38 which, combined with Viveros's criminal history category of I, yielded a sentencing range of 235 to 293 months. Viveros objected to the PSR's drug quantity determination, arguing that only seventeen kilograms should be included for sentencing purposes. He also objected to the two-level increase for possession of a weapon and the four-level leadership increase.
 
 
 4
 Following a sentencing hearing, the District Court overruled Viveros's objections. On the issue of drug quantity, the court found that the PSR correctly included the five kilograms involved in the second conspiracy as relevant conduct. The court overruled the objection to the firearms increase based on Tongate's testimony that Elfarra told him Viveros and two other Colombians had confronted her at a 7-11 store in Kansas City, Kansas, and threatened her with guns over a drug debt arising from a twelve kilogram deal. The court also relied on Tongate's testimony to sustain the leadership increase, finding that Viveros "gave direction as to a price and location of large amounts of drugs and handled large sums of money and directed travel to various parts of the country." The court stated that it did not find Viveros's testimony "entirely credible." On appeal, Viveros contends the District Court erred by overruling his objections to the increases.
 
 
 5
 Section 2D1.1(b)(1) provides for a two-level increase if "a dangerous weapon (including a firearm) was possessed." "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). We review a section 2D1.1(b)(1) increase for clear error. United States v. Pou, 953 F.2d 363, 371 (8th Cir.), cert. denied, 112 S. Ct. 1982 (1992). Tongate's testimony established that within one or two months of the twelve-kilogram deal that occurred in February 1991, Viveros confronted Elfarra at a 7-11 store and threatened her with a weapon because of a drug debt. See United States v. Granados, 962 F.2d 767, 772 (8th Cir. 1992) (affirming increase under similar circumstances). The District Court did not clearly err by imposing the increase in this case.
 
 
 6
 Concerning the leadership increase, section 3B1.1(a) provides for a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." We review a section 3B1.1(a) increase under the clearly erroneous standard. United States v. Harry, 960 F.2d 51, 53 (8th Cir. 1992). Viveros argues that the increase was improper because he did not exercise control over the actions of the other conspirators. This argument is meritless. "A defendant need not have direct control over others in the conspiracy in order to qualify as an organizer." United States v. Adipietro, 983 F.2d 1468, 1478 (8th Cir. 1993). Moreover, contrary to Viveros's contentions, the record demonstrated that he recruited Elfarra into the conspiracy and directed Elfarra, Tim Gray, and Deanne Davis to different locations to pick up cocaine. He also set the price for the cocaine and determined how much would be available. In Adipietro, we affirmed a leadership increase based on evidence that the defendant was "the sole conspirator in charge of the supply side of the conspiracy." Id. at 1478; see also United States v. Johnson, 906 F.2d 1285, 1291-92 (8th Cir. 1990) (affirming increase where defendant recruited one coconspirator, directed deliveries of cocaine to Chicago, and supplied all cocaine for distribution network). We therefore conclude the District Court did not clearly err by imposing the leadership increase.
 
 
 7
 Accordingly, we affirm the judgment of the District Court.
 
 
 
 [1]
 The Honorable Howard F. Sachs, Senior United States District Judge for the Western District of Missouri